# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| STEPHEN DORRIS § <br> § <br> v. § <br> § <br> CITY OF MCKINNEY, TEXAS, DANIEL § <br> KISTNER, NAMED IN HIS INDIVIDUAL § <br> AND OFFICIAL CAPACITIES, AND JOSE § <br> MADRIGAL, NAMED IN HIS § <br> INDIVIDUAL AND OFFICIAL § <br> CAPACITIES § | Civil Action No. 4:16-CV-00069 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Daniel Kistner's and Defendant Jose Madrigal's Motions to Dismiss Plaintiff's First Amended Complaint, or in the Alternative, Motion for Rule 7(a) Reply (Dkts. #21, #22) and Plaintiff's Rule 7(a) Reply (Dkt. #45). Having considered the pleadings, the Court finds that Plaintiff has stated plausible claims to overcome Defendant Daniel Kistner's and Defendant Jose Madrigal's qualified immunity defense. The Court denies Defendant Daniel Kistner's and Defendant Jose Madrigal's motions to dismiss the federal claims against them in their individual capacities (Dkts. #21, #22).

### BACKGROUND

Plaintiff worked for the City of McKinney, Texas (the "City") Fire Department from March 2003 to July 16, 2015. During his employment with the Fire Department, Plaintiff served as the elected president of the International Association of Fire Fighters, Local 2661 ("Local 2661"). Plaintiff alleges that the City terminated his employment after he organized a photo shoot for Local 2661's political action committee and its endorsed candidates for City Council. Plaintiff was not present at the photo shoot. During the photo shoot, photographs were taken of the endorsed candidates and off-duty members of Local 2661 standing in front of a City fire truck. No City

insignia were visible in the photographs. Plaintiff alleges that he was not personally involved with the movement of the City fire truck during the photo shoot. The City Attorney's office had previously informed Plaintiff that Local 2661 could not use photographs of on-duty fire personnel for political campaigns, even if all references to the City were removed.

The political action committee and one of the endorsed candidates used the photographs in political advertisements. After the political action committee posted the photographs on its Facebook page, City Fire Chief Daniel Kistner ("Defendant Kistner") asked the City Police Department to open an administrative inquiry to determine whether the post violated any City policy or rule. After an initial inquiry, Defendant Kistner commenced a full Internal Affairs investigation into Plaintiff. On July 16, 2015, at the conclusion of the Internal Affairs investigation, Defendant Kistner signed a Notice of Disciplinary Action (the "Notice") terminating Plaintiff for violating the City's policy on insubordination. The Notice stated that Plaintiff failed to follow an order given by the City Manager's office not to use City equipment for the purpose of endorsing candidates and failed to use his chain of command for his request to use City-owned property. Deputy City Manager Jose Madrigal ("Defendant Madrigal") approved Plaintiff's termination. Plaintiff appealed his termination and on October 23, 2015, three management-level City officials held an administrative hearing regarding Plaintiff's appeal. On October 27, 2015, the City upheld Plaintiff's termination.

On April 6, 2016, Plaintiff filed his First Amended Complaint alleging that the City, Defendant Kistner, and Defendant Madrigal violated his rights under the First and Fourteenth Amendment and under Texas law. On April 20, 2016, Defendant Kistner and Defendant Madrigal each filed a Motion to Dismiss for Failure to State a Claim, or in the alternative, Motion For Rule 7(a) Reply (Dkts. #21, #22). Defendant Kistner and Defendant Madrigal argued they were entitled

to qualified immunity and requested that the Court order Plaintiff to re-plead his claims against them to overcome the qualified immunity defense (Dkts. #21, #22).

On October 4, 2016, the Court denied the City's motion to dismiss the federal claims against it, but dismissed the state law claims against the City (Dkt. #44). The Court granted in part and denied in part Defendant Kistner and Defendant Madrigal's motions to dismiss. The Court dismissed the federal claims against Defendant Kistner and Defendant Madrigal in their official capacities as duplicative of the claims against the City (Dkt. #44). The Court denied Defendant Kistner's and Defendant Madrigal's motions to dismiss the state law claims against them in their official capacities. The Court directed Plaintiff to file a Rule 7(a) Reply addressing why Defendant Kistner and Defendant Madrigal are not entitled to a qualified immunity defense for the constitutional claims against them in their individual capacities. Specifically, the Court directed Plaintiff to explain why his interest in commenting on matters of public concern outweighed Defendants' interest in promoting efficiency. The Court would then determine whether Plaintiff pleaded sufficient facts that (1) the officials violated a statutory or constitutional right and (2) the right was clearly established at the time of the challenged conduct.

On October 14, 2016, Plaintiff filed a Rule 7(a) Reply (Dkt. #45). On November 26, 2016, Defendant filed a Motion for Leave to File Defendants' Response to Plaintiff's Rule 7 Reply (Dkt. #46). On January 5, 2017, the Court granted leave to file a response (Dkt. #48). On January 6, 2016, Defendant Kistner and Defendant Madrigal filed Defendants' Response to Plaintiff's Rule 7 Reply (Dkt. #49).

**LEGAL STANDARD**

To establish § 1983 liability, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556

3

U.S. at 678. Public officials whose positions entail the exercise of discretion may be protected by the defense of qualified immunity from personal liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the defense of qualified immunity and has established that the alleged actions were conducted pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Courts have historically engaged in a two-pronged analysis to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, a court must determine whether a "constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Second, if a constitutional right was violated, a court then determines whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. The law may be deemed to be clearly established if a reasonable official would understand that his conduct violates the asserted right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The official's subjective motivation is irrelevant to the qualified immunity defense except as far as it is relevant to the underlying constitutional claim. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of the right [are] sufficiently clear" such that every "reasonable official would have understood that what he is doing violates that right." *Creighton,* 483 U.S. at 640. The clearly established inquiry does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *See id. Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Supreme Court recently instructed courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity

4

analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).

## ANALYSIS

*Whether a Constitutional Right Would Have Been Violated on the Facts Alleged*

In the facts alleged in the Amended Complaint and Rule 7(a) Reply, Plaintiff sufficiently alleged a violation of his First Amendment rights.

In order for a public employee to recover for a free speech retaliation claim, the plaintiff must satisfy four elements: (1) the plaintiff must suffer an adverse employment decision; (2) the plaintiff's speech must involve a matter of public concern; (3) the plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency; and (4) the plaintiff's speech must have motivated the defendant's actions. *Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014). A First-Amendment, "association" claim "has similar elements but requires 'engagement in a constitutionally protected activity' (rather than speech) and omits the second element (i.e., that the protected act involve a matter of public concern)". *Id.* (citations omitted).

Plaintiff alleges that the City terminated his employment because of his association with Local 2661. In its October 14, 2016 order, the Court found that Plaintiff pleaded sufficient facts to satisfy the first two prongs of a First Amendment retaliation claim, i.e., that Plaintiff suffered an adverse employment decision and that Plaintiff's speech involved a matter of public concern. *See* Dkt. #44 (citing *Cox v. Kaelin*, 577 F. App'x 306, 311 (5th Cir. 2014) ("there can be no question that ... associating with political organizations and campaigning for a political candidate[ ] related to a matter of public concern")). The Court directed Plaintiff to file a Rule 7(a) Reply addressing

the third prong–whether Plaintiff's interest in commenting on matters of public concern outweighed Defendant Kistner and Defendant Madrigal's interest in promoting efficiency.

In *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006), the Supreme Court explained that:

> When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom . . . Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services . . . At the same time, the Court has recognized that a citizen who works for the government is nonetheless a citizen. The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens . . . So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively. (citations omitted).

In other words, a Court must balance Plaintiff's interest in making his statement against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 568 (1968). The employee's statement is not considered in a vacuum. *Rankin v. McPherson*, 483 U.S. 378, 388, (1987). "In performing the balancing . . . the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Branton*, 272 F.3d at 741 (citing *Rankin*, 483 U.S. at 388). "The Supreme Court has recognized as pertinent considerations 'whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" *Id*. (citing *Victor v. McElveen*, 150 F.3d 451, 457 (5th Cir. 1998)). "The indispensable predicate to balancing, however, is evidence from the public employer of actual or incipient disruption to the provision of public services . . . Without such evidence, there simply is no countervailing state interest to weigh against the employee's

First Amendment rights." *Grogan v. Lange*, 617 F. App'x 288, 292 (5th Cir. 2015) (citing *Vojvodich v. Lopez*, 48 F.3d 879, 887 (5th Cir. 1995)).

In his Amended Complaint and Rule 7(a) Reply, Plaintiff alleges that the Local 2661 photo shoot involved only off-duty union members, "meaning that no fire-fighting personnel were otherwise diverted from responses or made unavailable to respond to emergency calls." Plaintiff further alleges that union members who participated in the photo shoot were dressed in Local 2661 shirts and wore no City insignia. Plaintiff states that although a City fire truck appeared in the photo, the truck was not identifiable as City equipment. Plaintiff was not present at the photo shoot or personally involved in the use of the City fire truck. According to Plaintiff, his actions did not cause "any disruption in the provision of emergency services, imped[e] the operations of the department, affec[t] any working relationships or otherwise impai[r] the department's proper functioning."

In response, Defendant Kistner and Defendant Madrigal do not argue that the photo shoot or Plaintiff's involvement with Local 2661 caused any disruption to the provision of public services. Instead, Defendant Kistner and Defendant Madrigal argue that "government employees have considerable authority to restrict the political activities of their employees." Defendant Kistner and Defendant Madrigal point to *Phillips v. City of Dallas*, 781 F.3d 772, 779 (5th Cir. 2015), in which the Fifth Circuit held that the City of Dallas did not violate a firefighter's First Amendment rights by terminating him after he became a candidate for Dallas County Commissioner in violation of the Dallas City Charter. In *Philips*, the Fifth Circuit held that "the government came out ahead" for purposes of *Pickering* balancing because of its interest in regulating employee activity. *Id.* at 779-80. Citing the Supreme Court decision in *Civil Service Commission v. National Association of Letter Carriers*, the Fifth Circuit noted that there was "no

7

constitutional infirmity" in laws precluding state and government employees from a broad range of political activity, including "raising money for, publicly endorsing, or campaigning for political candidates." *Id.* at 780 (citing *Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 550–51, (1973)). Defendant Kistner and Defendant Madrigal argue that they did not violate Plaintiff's First Amendment rights because Texas law prohibits state employees from using a state-owned or state-leased motor vehicle to support the candidacy of a person for public office. *See* Tex. Gov't Code § 556.004(a-b). Defendant Kistner and Defendant Madrigal state that the City's interest in enforcing this law outweighs Plaintiff's interest in commenting on matters of public concern.

Although Plaintiff organized the photo shoot, Plaintiff did not attend the photo shoot and was not personally involved in moving the City fire truck. Plaintiff was thus not involved in the use of a state-owned or state-leased motor vehicle to support the political action committee's endorsed candidates. Defendant Kistner and Defendant Madrigal do not otherwise allege how the City's needs as an employer justified discharging Plaintiff for organizing the photo shoot. Defendant Kistner and Defendant Madrigal do not dispute that the photo shoot did not disrupt the provision of emergency services, impede the operations of the department, affect any working relationships or otherwise impair the fire department's proper functioning. Plaintiff has pleaded sufficient facts that his interest in commenting on matters of public concern outweigh the City's interest in promoting efficiency. *See Vojvodich v. Lopez*, 48 F.3d 879, 886 (5th Cir. 1995) ("Because the [defendant] has not alleged that [Plaintiff's] activities actually or potentially affected the Sheriff's Office's ability to provide services, there simply is no countervailing state interest to weigh against the employee's First Amendment rights.").

Defendant Kistner and Defendant Madrigal do not contest that Plaintiff's organization of the photo shoot motivated his termination. Plaintiff has alleged sufficient facts to make it plausible that Defendant Kistner and Defendant Madrigal violated his First Amendment rights.

*Whether Defendants' Actions Violated Clearly Established Constitutional Rights of Which a Reasonable Person Would Have Known*

Defendant Kistner and Defendant Madrigal argue that their actions did not violate clearly established law because government employers have authority to restrict the political activities of their employees and Texas law prohibits the use of a state-owned or state-leased motor vehicle to support the candidacy of a person for public office. However, as noted above, Plaintiff was not present at the photo shoot and was not involved in the use of the City fire truck in the photo shoot. The Fifth Circuit has consistently held that "the law is clearly established that a public employee may be neither discharged nor demoted in retaliation for exercising his First Amendment Rights." *Cox v. Kaelin*, 577 F. App'x 306, 313 (5th Cir. 2014). *See also Vojvodich v. Lopez*, 48 F.3d 879, 887 (5th Cir. 1995) (stating that "prior to March 1993, it should have been readily apparent to a reasonable [employer] that he could not retaliate against [an employee] for exercising his First Amendment rights unless the [employee's] activities had in some way disrupted the . . . department."); *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 750 (5th Cir. 1993) (holding that the fire chief "should reasonably have known that firing [Plaintiff] for his association with union firemen violated clearly established law.").

Here, Plaintiff has pleaded sufficient facts that Defendant Kistner and Defendant Madrigal violated his First Amendment rights. The law is clearly established that Defendant Kistner and Defendant Madrigal could not discharge Plaintiff for exercising these rights unless Plaintiff's activities had in some way disrupted the City fire department.

9

**CONCLUSION**

It is therefore **ORDERED** that Defendant Kistner's and Defendant Madrigal's motions to dismiss Plaintiff's claims against them in their individual capacities based on the defense of qualified immunity (Dkts. #21, #22) are hereby denied. The remainder of Defendant Kistner's and Defendant Madrigal's motions to dismiss were addressed in the Court's October 4, 2016 order (Dkt. #44).

**SIGNED this 10th day of April, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE